UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

In re:

      Gary W. Campbell and
      Catherine A. Campbell,              Case No. 08-33038
                                        Chapter 13
           Debtors.                    Hon. Daniel S. Opperman
_____/

Bernard and Lorraine Murawski,

      Plaintiffs,

v.                                   Adv. Pro. No. 08-03178

Gary W. Campbell and
Catherine A. Campbell,

      Defendants.
_____/

OPINION DENYING
THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    In July 2008, Gary and Catherine Campbell sought relief under Chapter 13 of the

Bankruptcy Code. Prior to the filing of their bankruptcy petition, the Debtors were involved in

protracted state court litigation with the Plaintiffs, Bernard and Lorraine Murawski. The origin

of the parties' dispute consists of extensive landscaping work performed by the Debtors on their

real property and the injuries then suffered by the Plaintiffs, on an individual basis as well as to

their real property, due to the Debtors' actions.

    The Plaintiffs' commenced this adversary proceeding by filing a three count complaint

against the Debtors. In Counts I and II of their complaint, the Plaintiffs seek a non-

dischargeability of a debt determination under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). In

Count III, the Plaintiffs seek a declaratory ruling on whether a permanent injunction entered in

the parties' state court civil litigation meets the definition of being a debt or claim under the Bankruptcy Code to be subject to the Debtors' Chapter 13 discharge. The Debtors now move for partial summary judgment. The Plaintiffs' oppose their motion.

For the reasons explained in this opinion, the Court denies the Debtors' motion for summary judgment because they failed to establish that there were no genuine issues of material facts and that they are entitled to judgment as a matter of law.


<u>Background and Procedural History</u>

Bernard and Lorraine Murawski (the "Plaintiffs") reside at 6168 North Lake Road, Otter Lake, located in Lapeer County, Michigan. Gary and Catherine Campbell (the "Debtors") reside in the same neighborhood as the Plaintiffs. The Debtors' real property adjoins the Plaintiffs' real property.

At some point in 2005, the Debtors engaged in extensive landscaping work on their property including, among other things, the building of a pond and possibly a berm. In 2006, the Plaintiffs commenced a state court civil action against the Debtors because they believed that the natural flow of surface waters from their property and across the Debtors' property had been disrupted due to the Debtors' landscaping activities. On February 28, 2007, the Plaintiffs filed an amended complaint in the state court action, which raised seven counts against the Debtors: Count I alleged that the Debtors building of their pond and berm violated the law of surface waters; Count II raised a negligence claim; Count III pled trespass; Count IV - raised a nuisance claim; Count V pled an assault and battery claim as to Mr. Murawaki and against Mr. Gary Campbell; Count VI raised conversion; and Count VII sought a temporary restraining order,

preliminary injunction as well as a permanent injunction.

On November 5, 2007, Hon. Nick O. Holowka of the Lapeer County Circuit Court entered an order granting partial summary judgment to the Plaintiffs on their Count I - violation of law of surface waters; Count II - negligence claim; Count III - trespass; and Count IV - nuisance claim. The Lapeer County Circuit Court stated its findings as follows:

> The Court finds that Defendants have liability to Plaintiffs under Counts I, II, III, and IV for constructing a pond and berm and fill which construction has interfered with the preexisting flow of surface and/or subsurface drainage in the area and caused water to backup onto the property of the Plaintiffs' and the common area.

(Def.'s Br. Ex. D. and Plf's Br. Ex. 19). Under this same order, the Lapeer County Circuit Court entered a permanent injunction, which replaced its previous order modifying a preliminary injunction. A jury trial was to be held on November 13 through 16, 2007 on the remaining unresolved factual issues and to determine damages.

In the Spring of 2008, a jury trial was held. The jury returned a verdict for the Plaintiffs and against the Debtors and awarded the Plaintiffs:

- $51,500 as to their negligence; trespass; nuisance; and violation of common law for property damage; and

- $75,020 against Mr. Campbell for assault, battery, and conversion.

Following the jury's verdict, the Lapeer County Circuit Court awarded Plaintiffs the additional sums of $104,045 in sanctions and $17,970.96 in taxable costs. Pre-judgment and post-judgment interest accrued on the Plaintiffs' negligence, trespass, nuisance, and common law property damages claims from August 2, 2006 through July 18, 2008 of $18,991.38. In addition, pre-judgment and post-judgment interest accrued on Mr. Murawski's assault, battery, and

3

conversion claim against Mr. Campbell from August 2, 206 through July 18, 2008 of $8,713.39.

Before the Plaintiffs' could obtain entry of the necessary final orders and judgments in their state

court civil action, Mr. and Mrs. Campbell filed for relief under Chapter 13 of the Bankruptcy

Code on July 25, 2008.

On October 17, 2008, the Plaintiffs commenced this adversary proceeding against the

Debtors. Their complaint contains three counts. In Counts I and II of their complaint, the

Plaintiffs seek a non-dischargeability of a debt determination under 11 U.S.C. §§ 523(a)(2)(A)

and 523(a)(6). In Count III, the Plaintiffs seek a declaratory ruling on whether the permanent

injunction entered in the parties' state court civil litigation meets the definition of being a debt or

claim under the Bankruptcy Code that would be subject to the Debtors' Chapter 13 discharge. In

response to the Debtors' motion to dismiss, the Plaintiffs filed an amended complaint on

February 19, 2009 (the "Amended Complaint"). The Plaintiffs' Amended Complaint

substantially expanded on their allegations to support their nondischargeability of debt claims

and the declaratory ruling they sought as to the permanent injunction.

The Debtors sought the dismissal of the Plaintiffs' Amended Complaint, which was

denied by the Court on June 3, 2009. The Debtors filed an Answer and Affirmative Defenses to

the Plaintiffs' Amended Complaint on August 18, 2009. Subject to limited admissions as to the

Court's jurisdiction and the Plaintiffs' address, the Debtors denied all of the other allegations

pled by the Plaintiffs in their Amended Complaint.

On March 18, 2010 the Debtors filed a motion for summary judgment. In support of their

motion, the Debtors relied on a copy of the Plaintiffs' first amended complaint and request for

injunctive relief filed in their state court lawsuit; limited pages from the depositions transcripts

4

for both of the Plaintiffs; and a copy of the permanent injunction entered by the Lapeer County Circuit Court. The Debtors did not rely on any affidavits, their own or other individuals, pleadings, or other discovery materials.

On April 8, 2010, the Plaintiffs filed their response to the Debtors' motion. The Plaintiffs attached extensive exhibits to support their opposition to the Debtors' summary judgment motion including among other items: a survey of the Plaintiffs' and the Debtors' real properties; at least 150 photographs related to the parties' respective real properties; numerous documents that the Plaintiffs relied on in their state court lawsuit (including certain witnesses' affidavits); limited excerpts of proceedings from the jury trial conducted on April 1, 2008, as to the testimony of Robert Haneline and Jeffrey McCormack; excerpts of both Plaintiffs' deposition transcripts; orders entered in the Plaintiffs' state court action; and proposed orders and judgments submitted by the Plaintiffs for entry by the Lapeer County Circuit Court. Like the Debtors, the Plaintiffs did not offer their affidavits in response to the Debtors' motion for summary judgment.

The first hearing set on the Defendants' motion of April 27, 2010 was adjourned at the parties' request. On May 18, 2010, the Court held a lengthy hearing on the Defendants' motion for summary judgment. At the conclusion of the parties' arguments, the Court took this matter under advisement.

Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O).

6

<u>Applicable Law</u>

Fed.R.Bankr.P. 7056 renders Fed.R.Civ.P. 56 applicable in adversary proceedings.  Rule

56(c) states that a

> judgment sought should be rendered if the pleadings, the discovery and disclosure
> materials on file, and any affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to judgment as a matter of law.

The central inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery

and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish

the existence of an element essential to that party's case and on which that party bears the burden

of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is the burden of the moving party to inform the Court of the basis of its motion and

identify those portions of the record that establish the absence of a material issue of fact.

*Celotex*, 477 U.S. at 323.  Once the movant fulfills this responsibility, the non-moving party

must come forward with "specific facts showing that there is a genuine issue for trial."

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This

requires the non-moving party to "do more than simply show that there is some metaphysical

doubt as to the material facts."  *Id*. at 586.  A "dispute about a material fact is 'genuine'. . . if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson v. Liberty Lobby*, 477 U.S. at 248.  To demonstrate a genuine issue, the non-moving

party must present sufficient evidence upon which a jury could reasonably find for the non-

movant; a "scintilla of evidence" is insufficient.  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

"A material fact is one that would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties, and would necessarily affect the application of an appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

At the summary judgment stage in the litigation, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. at 249. "The judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in her favor. *Id.* at 255. Summary judgment is appropriately granted when the issues in a case involve solely the application of law to undisputed facts. *Panetta v. Sondergeld (In re Sondergeld)*, 327 B.R. 313, 315 (Bankr. E.D. Mich. 2005).

## Analysis

A review of the parameters of a discharge awarded in a Chapter 13 case is helpful to provide an overall framework for the Court's analysis. Subject to a limited exception that is inapplicable in this adversary proceeding, 11 U.S.C. § 1328(a) states in pertinent part:

> as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt —
>
> . . . .
>
> (2) of the kind specified . . . in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);
>
> . . . .

8

(4) for restitution, or damages, awarded in a civil action against the debtor as a result of a willful or malicious injury by the debtor that caused personal injury to an individual[.]

In their Amended Complaint, the Plaintiffs seek a determination that the amounts awarded to them by the jury and the Lapeer Circuit Court in their state court civil action are nondischargeable debts under § 523(a)(2)(A) and § 523(a)(6). In addition, the Plaintiffs seek a declaratory ruling as to whether the permanent injunction entered against the Debtors is a debt or claim as those terms are defined under the Bankruptcy Code. In support of their summary judgment motion, the Debtors raise several arguments on each count of the Plaintiffs' Amended Complaint. The Court will consider each one separately.

A.      Count I - 11 U.S.C. § 523(a)(2)(A)

In Count I, the Plaintiffs seek a non-dischargeability of a debt determination under 11 U.S.C. §§ 523(a)(2)(A). In the Plaintiffs' Amended Complaint, the factual background allegations pled by them to support this count spans ten pages. These lengthy factual allegations, in essence, allege that the Debtors engaged in false pretenses, made false representations, and committed actual fraud to obtain and continue their trespass of the Plaintiffs' property. The Plaintiffs further allege that the Debtors engaged in such fraudulent conduct throughout the entire time the parties have been involved in their property dispute. The Plaintiff further allege that they were unaware of the extent of the Debtors' fraud until their jury trial commenced in their state court civil action. The Plaintiffs pled detailed factual allegations as to the false pretenses the Debtors engaged in, the specific misrepresentations made by the Debtors to them as well as to others, and the Debtors fraudulent conduct. In their answer to the Plaintiffs' Amended Complaint, the Debtors denied all of these allegations.

9

Section 523(a) states that a

discharge under [§] 1328(b) . . . does not discharge an individual debtor from any debt —
>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
>
>>    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

The following elements must be proven by a creditor to except a debt from discharge under Section 523(a)(2)(A) based on false representation:

>    (1)    the debtor obtained money . . . [property, services, . . . or an extension . . . of credit] . . .;
>
>    (2)    through a material misrepresentation;
>
>    (3)    that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
>
>    (4)    the debtor intended to deceive the creditor;
>
>    (5)    the creditor justifiably relied on the false representation; and
>
>    (6)    its reliance was the proximate cause of the loss.

*Rembert v. AT&T Universal Card Services, Inc., (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (*citing Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir. 1993)).

Under 523(a)(2)(A), "[f]alse representations and pretenses encompass statements that falsely purport to depict current or past facts." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (*quoting Peoples Sec. Fin. Co., Inc., v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Id.* (other citations omitted).

Another basis to except a debt from discharge under § 523(a)(2)(A) is if the debt arises from a debtor's actual fraud. The term "actual fraud" used in § 523(a)(2)(A) "involves moral turpitude or intentional wrong, as opposed to fraud "implied in law," which may be found in cases where such intentional wrongdoing is not present. *Coman v. Phillips* (*In re Phillips*), 804 F.2d 930, 932 (6th Cir. 1986). "Actual fraud has been defined as intentional fraud, consisting in deception in intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." *In re Vitanovich*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) (other citations omitted).

The Debtors advance three arguments in support of their motion for summary judgment as to Count I. First, the Debtors argue that the Plaintiffs' § 523(a)(2)(A) claim stated in Count I is barred by estoppel and res judicata. The Debtors do not cite any authority for this proposition. In response, the Plaintiffs contend that neither estoppel or res judicata apply because their state court action did not include a fraud claim and no judgments were entered by the state court. The Plaintiffs further assert that they first learned about the extent of the Debtors' fraudulent scheme when the jury trial took place and it was then impossible for them to amend their complaint.

The doctrine res judicata refers to the "preclusive effect of a judgment" and includes both (1) claim preclusion and (2) issue preclusion, also known as collateral estoppel. *Taylor v. Sturgell*, 530 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008).

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

*New Hampshire v. Maine*, 523 U.S. 742, 748-49, 121 S.Ct.1808, 1814 (2001).

The Court determines that the Plaintiff's § 523(a)(2)(A) claim is not precluded by the doctrine of res judicata for two reasons. First, final judgments were not entered by the Lapeer County Circuit Court due to the automatic stay imposed by the filing of the Debtors' Chapter 13 petition. As recognized by the parties on the record during the hearing on the Debtors' summary judgment motion, neither the Plaintiffs or the Debtors sought relief from the automatic stay to enable the entry of any orders or final judgments in the Plaintiffs' state court action. Second, the claim preclusion aspect of res judicata does not apply to the Plaintiffs' nondischargeability of debt actions under § 523 because such claims (1) are within the exclusive jurisdiction of federal bankruptcy courts under 11 U.S.C. § 523(c)(1) and (2) they did not exist at the time of the state court proceedings because the Debtors had not yet filed bankruptcy.

For their second argument, the Debtors assert that the Plaintiffs' § 523(a)(2)(A) claim is actually a disguised intentional damage to property claim. In support of this argument, the Debtors point out that the Plaintiffs rely on the amounts awarded to them by the jury for the Debtors' negligence, trespass, nuisance, and violation of common law property causes of actions in their state court civil action. The Debtors contend that a claim of this nature is barred by 11 U.S.C. § 1328(a)(2) and (a)(4).

The Plaintiffs disagree with the Debtors' characterization of their claim as stated in Count I. The Plaintiffs point out that they have specifically alleged in Count I of their Amended Complaint that the Debtors obtained their property and continue to do so "by way of a fraudulent trespass" and through the Debtors' "fraudulent scheme." The Plaintiffs assert that genuine issues of material fact exists to preclude the Court from granting the Debtors' motion.

12

At this point and drawing all justifiable inferences in the Plaintiffs' favor, the Court concludes that genuine issues of material fact exist as to the Plaintiffs' § 523(a)(2)(A) claim. The terms false pretenses, false representation, and actual fraud expressly stated in § 523(a)(2)(A) are used in the disjunctive. A debt may be found to be nondischargeable under § 523(a)(2)(A) as to one or all three expressly stated conditions. While the Debtors advance a strong argument about the weakness of the Plaintiffs' § 523(a)(2)(A) claim based on at least false pretenses or false representations, they have failed to present any evidence to support their position or that establishes there are no genuine issues of material facts.

The partial summary judgment awarded by the Lapeer County Circuit Court on the Plaintiffs' violation of law of surface waters, negligence, trespass, and nuisance claims constitutes an adjudication on the merits under Michigan law. *Mable Cleary Trust v. Edard-Marlah Muzyl Trust*, 262 Mich. App. 485, 510; 686 N.W.2d 770, 787 (2004) (recognizing as a general matter that "[a] summary disposition ruling is the procedural equivalent of a trial on the merits that bars relitigation on principles of res judicata."). Although the Court recognizes this principle under Michigan law, the findings made by the Lapeer County Circuit Court on the record to support its ruling are not included in the record before the Court. In addition, the record before the Court includes numerous exhibits including aerial photos of the properties at issue and the testimony of several expert witnesses that the Court must consider and weigh. At summary judgment, it is improper for the Court to weigh such evidence. *Anderson v. Liberty Lobby*, 477 U.S. at 249.

The Court does, however, recognize that there are similarities between the factual allegations that support the Plaintiffs' state court action as well as the damages awarded in this

action and the Plaintiffs' nondischargeability of a debt claim under § 523(a)(2)(A). Yet, the fundamental difference between the two actions is that the Plaintiffs' state court action did not raise any fraud allegations against the Debtors. Such allegations were properly raised by the Plaintiffs and brought in this Court pursuant to its exclusive jurisdiction under 11 U.S.C. § 523(c)(1). While the Debtors correctly state the law that in Chapter 13 cases debts for willful and malicious injuries to property are subject to discharge under § 1328(a), it is impossible to discern at this point if this is the type of debt involved under Count I. The Court concludes that genuine issues of material fact exist by a substantial margin on the Plaintiffs' Count I that must be resolved at trial.

The final argument raised by the Debtors as to Count I of the Plaintiffs' Amended Complaint is that the Plaintiffs admitted during their respective depositions that the Debtors did not consult with them or seek their permission <u>before</u> constructing the pond on their property. The Debtors assert that this admission establishes that the Debtors did not obtain the Plaintiffs' property by a false pretense, false misrepresentation, or through fraud. The Court is unpersuaded by the Debtors' argument because it is narrowly focused on one specific point in time despite the fact that the Plaintiffs' action is grounded on false pretenses, false representations, or actual fraud that took place over a continuous period of time. Even if the Court were to credit the Plaintiffs' admission to the Debtors, this limited admission by itself does not negate the Plaintiffs' § 523(a)(2)(A) claim in its entirety. It is one fact to be considered and weighed against a plethora of other facts; all of which are in dispute and must be determined at a trial. For all of these reasons, the Court must deny the Debtors' motion for summary judgment as to Count I of the Plaintiffs' Amended Complaint.

B.    Count II - 11 U.S.C. § 523(a)(6)

In their Count II, the Plaintiffs seek a nondischargeability of debt determination under § 523(a)(6) about two different debts.  The basis of one debt is the Debtors' intentional injury to the Plaintiffs' real property.[1]  In contrast, the other debt is grounded in the personal injury suffered by the Plaintiff, Mr. Murawski.  The Debtors only move for summary judgment with regard to the personal injury claim.

The Debtors contend that the damages awarded by the jury based on the Plaintiffs' assault, battery, and conversion claims in their state court civil action are not actionable under § 523(a)(6) and are not covered by § 1328(a)(4).  The Debtors argue that the Plaintiffs' claim fails as a matter of law because (1) the jury verdict stemmed from the Plaintiffs' trespass on to the Debtors' property and (2) no damages were awarded by a judgment.  In response, the Plaintiffs contend that damages were awarded by the jury and that a judgment is not required.  In support of their position, the Plaintiffs rely solely on the statutory language of § 1328(a)(4).

With regard to the Debtors' position that the jury verdict stemmed from the Plaintiffs' trespass on the Debtors' property, the Court determines that their position is unsubstantiated and merely raised as an argument in the Debtors' brief.  The Debtors provided no evidence to support this position.

Turning to the next argument, the Court determines that the Debtors engage in far too narrow of an interpretation of the allegations pled in Count II.  The Debtors' position is

---

1.  Under 11 U.S.C. § 1328(a), debts for willful and malicious injury to property are dischargeable.  The Debtors, however, did not move for summary judgment on this ground.  As such, the Court must limit its ruling to only those issues properly before it.

understandable though due to the express reference to § 523(a)(6) made by the Plaintiffs in their Amended Complaint.  Even though the Plaintiffs cite § 523(a)(6), the Plaintiffs' allegations as pled indicate that they actually seek a determination that this debt is not covered by the Debtors' Chapter 13 discharge, if and when awarded, due to the exception provided by 11 U.S.C. § 1328(a)(4).  From the Debtors' perspective, while a more prudent and helpful approach would have been for the Plaintiffs to specifically refer to 11 U.S.C. § 1328(a)(4) in their Amended Complaint, such a specific allegation was not required.  It is quite obvious to the Court that the Plaintiffs, at a minimum, referred to § 523(a)(6) in their Amended Complaint due to the similarity in the statutory language of "willful" along with "malicious" injury expressed in both § 523(a)(6) and § 1328(a)(4).

In a Chapter 13 case, a discharge awarded to a debtor does not discharge a debt "for restitution, or damages, awarded in a civil action against the debtor as a result of a willful **or** malicious injury by the debtor that caused personal injury to an individual[.]"  11 U.S.C. § 1328(a)(4) (emphasis added).  This exception to discharge under § 1328(a)(4) was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  *See* Pub. L. No. 109-8, § 1501(B)(1), 119 Stat. 23 (codified as amended in scattered sections of 11 U.S.C.).  In contrast, § 523(a)(6) excepts from discharge any debt "for willful **and** malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6) (emphasis added).

The Court determines that § 1328(a)(4) applies to the circumstances in this adversary proceeding because damages were awarded by the jury in the civil action brought by the Plaintiff - Mr. Murawski against the Debtor - Mr. Campbell.  It is true that the amounts awarded by the jury in the Plaintiffs' state court action are not yet enforceable against the Debtors because final

16

judgments were not entered prior to the filing of the Debtors' Chapter 13 petition. *York v. Civil Service Com'n*, 263 Mich. App. 642, 653, 689 N.W.2d 526, 533 (Mich. Ct. App. 2004) (explaining that "it is well settled that courts can only act through their written judgments or orders . . . [and] consistent[] with this time-honored rule, we have held that the purpose of the judgment is to reflect the verdict in writing, which among other things provides a mechanism to enforce the verdict rendered by the jury.") (citations omitted). The plain statutory language of § 1328(a)(4), however, does not require the entry of a judgment. The express statutory language simply necessitates that damages were awarded in a civil action.

Regardless of this substantive determination by the Court, genuine issues of material fact exists as to whether such damages were awarded against the Debtor - Mr. Campbell "as a result of a willful or malicious injury by the [Debtor - Mr. Campbell only] that caused personal injury to . . . [the Plaintiff, Mr. Murawski]." Again, the Debtors denied each of the allegations pled in the Plaintiffs' Amended Complaint as to this claim. In addition, the Debtors did not provide the Court with any of the record of the state court action on this aspect of the Plaintiffs' claim to allow the Court to make a determination that there are no genuine issues of fact and that the Debtors are somehow entitled to judgment as a matter of law. The Debtors have failed to establish the lack of disputed facts and that the Plaintiffs will be unable to prove an element of their claim as pled in Count II. The Court will deny the Debtors' motion for summary judgment as to the Count II with regard to the debt owing by the Debtor, Mr. Campbell, to Mr. Murawski.

C.    Count III - Preliminary Injunction

In Count III of the Plaintiffs' Amended Complaint, the Plaintiffs seek a declaratory ruling on whether the permanent injunction entered by the Lapeer County Circuit Court is a debt or

17

claim as those terms are defined under the Bankruptcy Code that is subject to discharge.

Paragraph 4 of the "Order Granting Plaintiffs' Motion for Partial Summary Disposition and

Permanent Injunction To Implement Recommendation of Special Master" (the "Permanent

Injunction") states in pertinent part:

> In addition, the Court now enters a Permanent Injunction replacing the Order
> Modifying Preliminary Injunction entered by the Court on November 16, 2006.
> The Court Orders as follows:
>
> a.  Defendants shall engage the services of a licensed professional engineer to
> evaluate the site hydrology and hydraulics for a range of flows up to and
> including the 10-day and 24-hour, 1-percent chance store events for Lapeer
> County, Michigan and consider potential groundwater discharge contributions to
> the surface water flow regime.
>
> b.  Defendants shall provide an unimpeded avenue for flow to cross the
> Defendants' property in one of the following ways:
>
> > i.      All flow through pond;
> > ii.     Partial flow through pond; or
> > iii.    Divert flow around pond, while containing the flow path on
> >         the Defendants' property.
>
> This flow cannot discharge to Hemingway Lake, because it would cross a natural
> drainage divide.  It would also add additional drainage to the dam.
>
> c.  Defendants shall design and construct pond inlet and outlet control structures
> that convey a range of flows up to and including the 10-day and 24-hours, 1
> percent chance storm events for Lapeer County, Michigan, without increasing
> water surface elevations that adjacent, upgradient or downgradient property
> owners would have experienced prior to the pond excavation and berm
> construction.  The design plans must be signed and sealed by a professional
> engineer licensed in Michigan.
>
> d.  Defendants shall construct the designed conveyance system and point inlet and
> outlet control structures pursuant to a schedule to be established by the Special
> Master.
>
> e.  Defendants shall design a driveway that does not pond water on upgradient
> property owners.  This requires providing an adequate drainage outlet for the
> Gozdiewski and Craddock parcels.  This may require enlargement of the

18

Campbell driveway culvert.

f.  The Special Master shall approve the plans for the drainage conveyance system and shall also inspect the construction both during and after construction to ensure that the remedy is properly implemented, including, but not limited to, ensuring that the water is being conveyed from the Murawski property and the common area at an appropriate elevation and that Defendants do not block the flow of water draining from the Murawski property and the common area prior to it entering the drainage conveyance system.

g.  The Special Master shall heretofore be compensated for her work by the Defendants, subject to review and approval by the court as to reasonableness.

h.  All work performed by the Defendants must comply with soil erosion and sedimentation control (SESC) requirements as implemented by the Lapeer County SESC office.

(Defs' Br. Ex. D. and Plfs' Br. Ex. 19).

Under the Bankruptcy Code, § 101(12) defines the term "debt" to mean "a liability on a claim."  Section 101(5) states that

the term claim means —

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The Debtors advance two arguments in support of their motion for summary judgment on Count III of the Plaintiffs' Amended Complaint.  For their first argument, the Debtors contend that the declaratory ruling sought by the Debtors is actually a disguised property damage claim under § 523(a)(6).  The Debtors' assert that such a claim is subject to discharge under 11 U.S.C. § 1328(a).  The Plaintiffs disagree.

19

The Court determines that contrary to the Debtors' interpretation of Count III, the Plaintiffs do not rely on § 523(a)(6) to support the declaratory ruling sought by them. Section 523(a)(6) is not at issue or relevant to Count III.

In their second argument for summary judgment as to Count III, the Debtors contend that the Permanent Injunction is a dischargeable debt because it fulfills the definitions of a debt and claim as those terms are defined under the Bankruptcy Code. In support of this argument, the Debtors rely on *Ohio v Kovacs*, 469 U.S. 274, 105 S.Ct. 705 (1985) and *Kennedy v. Medi-Cap Pharmacies, Inc.*, 267 F.3d 493, 498 (6th Cir. 2001).

The Debtors assert that certain provisions of the Permanent Injunction require them (1) to pay the fees of the Special Master; (2) to do substantial earthwork; and (3) to engage the services of a licensed professional engineer – all of which necessitates that they expend money to comply with the Permanent Injunction. The Debtors point out that the Plaintiffs, during their depositions, admitted that the Debtors could be required to spend money to comply with the Permanent Injunction. The Debtors argue that based on *Kennedy v. Medicap* such expenditures of money would be for the Plaintiffs' benefit and as such is a claim under the Bankruptcy Code, which is dischargeable.

The Debtor further assert that because they would have to spend money to comply with the injunction, their failure to do so would be a breach and thus, equal non-performance. According to the Debtors, "if any breach of the obligations imposed by the injunction give rise to a "claim" in the Plaintiffs' favor and that claim arose before the order of relief in the bankruptcy case, such "debts" would be discharged under 11 U.S.C. § 1328. (Defs' Br. at 8).

The Plaintiffs disagree with the Debtors' characterization of the Permanent Injunction and

their reading of *Ohio v. Kovacs* and *Kennedy v. Medicap*.  First, the Plaintiffs contend that under the Permanent Injunction the Debtors are required "to remediate and ameliorate the continued violation of Michigan law.  There is no cost of clean up being sought whatsoever against the [Debtors]."  (Plfs' Br. at 27).  The Plaintiffs further argue that the Permanent Injunction "does not allow or even contemplate that [they] can enter the property of the [Debtors], ameliorate the ongoing violation of Michigan law and then sue the [Debtors] for recovery of the funds expended."  (Plfs' Br. at 28).  Second, the Plaintiffs assert that the Permanent Injunction does not provide them with any right to receive payment from the Debtors.  Even if the Debtors are required to expend funds to comply with the Permanent Injunction, the Plaintiffs assert that this requirement does not create a debt or claim as defined under the Bankruptcy Code.  The Plaintiffs point out that any funds expended by the Debtors would not be made to them and are required to bring the Debtors in compliance with Michigan law.  In addition, the Plaintiffs point out that the Debtors can easily comply with the Permanent Injunction by fixing the problems themselves without spending any money.

The Court initially determines that the reasoning and standards expressed in *Ohio v Kovacs* and *Kennedy v. Medicap* are on point and apply to allow the Court to address the substantive issue involved in the Plaintiffs' Count III.  Both of these cases addressed whether obligations under injunctions are 'liabilities on claims' subject to discharge.  As pointed out by the Plaintiffs during the hearing on the Debtors' motion, the holding of *United States v. Whizco, Inc*., 841 F.2d 147 (6th Cir. 1988) is also directly on point.  However, beyond the Court's recognition of the relevant case law including the precedent of the Sixth Circuit Court of Appeals, the Court must conclude, like the other conclusions previously made by the Court as to Counts I and II, that the

Debtors have failed to establish that there are no genuine issues of fact and that they are entitled to summary judgment with regard to Count III.

The Permanent Injunction, in paragraph 4 subsections (a) through (h), requires the Debtors to take some action to remedy the existing obstruction on their property that impedes the natural drainage of water flow from the Plaintiffs' property through the Debtors' property. The Debtors are required to retain certain professionals to assist them in accomplishing the conditions of the Permanent Injunction. It is implied in paragraph 4a that the Debtors are responsible for the costs associated with the engineer they are to engage. In paragraph 4b, the Debtors are required to provide an "unimpeded avenue for flow to cross their property" by utilizing at least one of three expressed methods. The power to undertake certain actions is vested in the Debtors under paragraph 4c, d, e, and h. A special master is required to approve the Debtors' plans for the drainage system and to monitor the construction of such system as it is being built and after its construction. Paragraph 4f, expressly requires the Debtors to pay for the reasonable fees associated with the special master's work, once such fees are reviewed and approved by the Lapeer County Circuit Court. None of these subsections address or expressly require the Debtors to make any payments to the Plaintiffs. None of these subsections address the ramifications that may arise in the event the Debtors' fail to comply with the Permanent Injunction. None of the subsections indicate that the Plaintiffs are entitled to receive compensation instead of the specific performance remedy provided under the Permanent Injunction if the Debtors' fail to comply with the Permanent Injunction.

In light of the record before the Court, however, the Debtors have failed to establish that the Permanent Injunction constitutes a claim because the Plaintiffs' right to equitable relief is an

alternative to a right to payment or that the Debtors' compliance with the Permanent Injunction requires them to expend money. Each of the points asserted by the Debtors raise unresolved factual questions. First, with regard to the payment of the fees of the special master. There is nothing in the record that indicates the Debtors had incurred, as of the filing date of their petition, or will incur such fees. The Debtors did not present any affidavit in support of their position. The Plaintiffs do not appear to be seeking the payment of money from the Debtors. Again, there is no evidence in the record as to this point except for the specific language used in the Permanent Injunction and the unsubstantiated argument made by the Plaintiffs.

As for the Debtors being required to engage in substantial earthwork, there is no evidence in the record that such a requirement necessitates that the Debtors spend any money to comply with it. The Plaintiffs assert that the Debtors are able to comply with this requirement by performing the work themselves using equipment or machines they already possess without incurring any costs. Again, the Debtors did not present any affidavit or other evidence to support their position. There is no evidence in the record as to this issue beyond it merely being an argument advanced by the Plaintiffs in their brief.

Finally, the Debtors argue that they will incur fees to hire and retain the services of a licensed professional engineer. The Plaintiffs contend "that, most if not all, of the engineering work has been done by the [Debtors'] expert, Robert Haneline." (Plf.'s Br. at 29). This is a disputed issue of fact.

Due to the existence of genuine issues of material facts, the Court is required to deny the Debtors' motion for summary judgment as to Count III of the Plaintiffs' Amended Complaint. The Debtors have failed to meet their burden on summary judgment that the Plaintiffs will not be

able to prove that the Permanent Injunction is not a debt or claim in accordance with the applicable case law previously referred to this opinion.

## Conclusion

For all of the reasons explained in this opinion, the Court will deny the Debtors' motion for summary judgment in its entirety. This matter shall proceed to trial as scheduled on June 29, 2010.

Signed on June 04, 2010

                                   /s/ Daniel S. Opperman
                              Daniel S. Opperman
                              United States Bankruptcy Judge